Mr. Marlin M. Feagle Columbia County Attorney Post Office Box 1653 Lake City, Florida 32056-1653
Dear Mr. Feagle:
On behalf of the Chair of the Columbia County Board of County Commissioners, you have asked for my opinion on substantially the following questions:
1. Is Columbia County (a non-charter county) authorized, through its adopted comprehensive land use plan and land development regulations, to regulate the possession and sale of non-indigenous exotic birds on certain properties in unincorporated areas within boundaries?
2. Is Columbia County prohibited by Article IV, section 9, Florida Constitution, and the permit procedures provided in the Florida Statutes and administrative rules, from enjoining the possession, breeding or sale of non-indigenous exotic birds in neighborhoods where the county determines that such use of the individual's land constitutes a public nuisance or a threat to the public?
In sum:
1. Columbia County may adopt a comprehensive land use plan and land development regulations that have the effect of ensuring that permitted wildlife is maintained in suitable neighborhoods or locations. The county may not prohibit the possession of wildlife but, to the extent that its land use ordinances have the effect of restricting wildlife possession to locations of suitable acreage or where fencing is permissible, for example, such ordinances would not conflict with the authority of the Florida Fish and Wildlife Conservation Commission.
2. Columbia County is prohibited by Article IV, section 9, Florida Constitution, and the statutes and administrative rules promulgated thereunder, from enjoining the possession, breeding or sale of non-indigenous exotic birds. The authority to determine initially whether such use constitutes a public nuisance or a threat to the public is vested exclusively in the Florida Fish and Wildlife Conservation Commission. However, the county is authorized to regulate the abatement of public nuisances such as sanitation or noise that may be associated with the keeping of wildlife.
According to your letter, a Columbia County land use ordinance authorizes an individual to possess and house "exotic animals" in agricultural-zoned districts only after obtaining a special exception permit from the Columbia County Board of Adjustment. For purposes of the land development regulations, "exotic animals" include all animals except house cats and dogs, and include feathered vertebrates other than poultry and livestock.
The property in question is zoned for agricultural uses. One property owner operates a business that breeds and raises rare birds for eventual sale to the public, although sales are not made from this property. Neighboring property owners have objected to these operations because of the resulting noise and nuisance.
The county's code enforcement division investigated the complaints and found that the business may continue to operate as a non-conforming use since it existed prior to the effective date of the county's land development regulations. The neighboring property owners filed an administrative appeal of this determination and allege that there is evidence that the business has intensified and expanded its non-conforming use of the property since it was granted its permits. It is the county's position that if the use of the property has intensified then the business may continue its operations at the site only after applying for and obtaining a special exception from the county. The county is concerned that this position may infringe on the constitutional and statutory powers of the Florida Fish and Wildlife Conservation Commission.
Your questions are related and will be answered together.
Article IV, section 9, of the Florida Constitution, provides for a constitutional fish and wildlife conservation commission. The commission is charged with exercising the regulatory and executive powers of the state and with establishing procedures to ensure adequate due process in the exercise of its regulatory and executive functions. Chapter 372, Florida Statutes, provides a statutory framework for the activities of the Fish and Wildlife Conservation Commission (commission).
No person may possess any native or non-native wildlife in captivity except as authorized by permit issued in accordance with sections 372.921 or 372.922, Florida Statutes.[1] Section 372.921(1), Florida Statutes, regulates the exhibition of captive wildlife for purposes of public display or sale:
In order to provide humane treatment and sanitary surroundings for wild animals kept in captivity, no person, firm, corporation, or association shall have, or be in possession of, in captivity for the purpose of public display with or without charge or for public sale any wildlife, specifically birds, mammals, and reptiles, whether indigenous to Florida or not, with-out having first secured a permit from the Fish and Wildlife Conservation Commission authorizing such person, firm, or corporation to have in its possession in captivity the species and number of wildlife specified within such permit; however, this section does not apply to any wildlife not protected by law and the regulations of the Fish and Wildlife Conservation Commission.
The fees established in this statute are dependent on the number of animals maintained on the property.[2]
The statute also provides that:
"Permits issued pursuant to this section and places where wildlife is kept or held in captivity shall be subject to inspection by officers of the Fish and Wildlife Conservation Commission at all times. The commission shall have the power to release or confiscate any specimens of any wildlife, specifically birds, mammals, or reptiles, whether indigenous to the state or not, when it is found that conditions under which they are being confined are unsanitary, or unsafe to the public in any manner, or that the species of wildlife are being maltreated, mistreated, or neglected or kept in any manner contrary to the provisions of chapter 828, any such permit to the contrary notwithstanding."[3]
Thus, the commission is charged with inspecting the conditions under which permitted wildlife is kept and ensuring that the conditions of confinement present no threat to the human public or to the animals themselves.
Section 372.922, Florida Statutes, regulates the personal possession of captive wildlife. The statute classifies wildlife based on its nature and makes it unlawful for any person to possess any wildlife until a permit has been obtained from the Fish and Wildlife Conservation Commission.[4]
Section 372.922(3), Florida Statutes, provides:
The commission shall promulgate regulations defining Class I and II types of wildlife. The commission shall also establish regulations and requirements necessary to ensure that permits are granted only to persons qualified to possess and care properly for wildlife and that permitted wildlife possessed as personal pets will be maintained in sanitary surroundings and appropriate neighborhoods.[5]
The statute requires that the commission make the determination that the neighborhoods into which wildlife are introduced and confined are appropriate for such use.
In 1980 this office was asked substantially the same question as the one you have posed, that is, whether a local government, in that case the City of Miramar, was precluded by the permit procedure in section 372.922, Florida Statutes, from regulating or prohibiting the possession of wildlife within its jurisdictional boundaries. The opinion recognized that Article IV, section 9, of the Florida Constitution vested in what is now the Fish and Wildlife Conservation Commission (formerly the Game and Fresh Water Fish Commission) the exclusive authority to exercise all of the state's regulatory power over all wild animal life (except for penalties and license fees). Therefore, the opinion concluded that a municipality is precluded from regulating or prohibiting the possession of wild animal life within its corporate limits.
Following issuance of Attorney General's Opinion 80-04, related issues were litigated in City of Miramar v. Bain.[6] The issue in that case was whether the appellant could construct a fence around the front of her property even though a city ordinance prohibited the fencing of front yards in a single-family residential area. The appellant had a permit issued by the Florida Game and Fresh Water Fish Commission pursuant to section 372.922, Florida Statutes, to possess two cougars, which she used in her business. The Fourth District Court of Appeal recognized that the commission had exclusive authority to enact rules and regulations governing wildlife. As the court pointed out, "[a] legislative enactment or municipal ordinance as we have here, if in conflict with the regulations of the Commission must give way to the Constitutional mandate establishing the Commission."[7] The court concluded that no conflict existed between the regulations of the commission and the ordinance of the City of Miramar that prohibited fencing of front yards in a single-family residential area.
We construe [the administrative rules of the commission] to mean that prior to issuance of a permit, applicants must demonstrate to the Commission that they can provide satisfactory caging facilities without violation of existing city or county building and zoning regulations. This construction provides for harmonious blending of the Commission's permit requirements and city and county building and zoning regulations. It also insures that wildlife will only be maintained in appropriate neighborhoods.[8]
Based on consideration of the Florida Constitution, the statutes regulating the possession of wildlife, the case law interpreting these provisions, and the administrative rules promulgated by the Florida Fish and Wildlife Conservation Commission, Columbia County appears to have the authority to adopt land use regulations and zoning regulations that may indirectly affect the possession or sale of non-indigenous exotic birds on certain properties within its jurisdictional boundaries.
As the Miramar court noted, prior to issuing a wildlife permit the commission is required to determine that no violation of existing city or county building or zoning regulations will occur. Thus, to the extent it does not enact regulations conflicting with the constitutional and statutory provisions of the commission, a county may adopt general zoning and land use regulations that apply equally to those possessing permitted wildlife and other property owners. For example, the county may adopt zoning regulations providing for side and rear yard size requirements or building set back lines in certain areas of the county. The fact that a permit to possess wildlife has been obtained by an individual does not except that person from the land use restrictions of the area in which his premises are located. While a county may not prohibit the possession, breeding or sale of wildlife, it may adopt and enforce zoning ordinances and land use regulations that may indirectly affect the possession of wildlife. These regulations would not appear to conflict with the Fish and Wildlife Conservation Commission's wildlife regulatory authority. The Florida Fish and Wildlife Conservation Commission, in a recent letter to this office, stated:
The Commission recognizes the authority of local governments to regulate the abatement of public nuisances such as sanitation or noise which may be associated with the keeping of captive wildlife. In those situations, local government is regulating the nuisance itself and only indirectly having an impact on the possession of wildlife.[9]
In sum, it is my opinion that Columbia County may adopt a comprehensive land use plan and land development regulations that have the effect of limiting wildlife to suitable neighborhoods. The county has no authority to prohibit the possession of wildlife but, to the extent that its land use ordinances have the effect of restricting wildlife possession to locations of suitable acreage or where fencing is permissible, for example, such ordinances would not conflict with the authority of the Florida Fish and Wildlife Conservation Association.
Further, Columbia County is prohibited by Article IV, section 9, Florida Constitution, and the statutes and administrative rules promulgated thereunder, from enjoining the possession, breeding or sale of non-indigenous exotic birds. The authority to determine initially whether such use constitutes a public nuisance or a threat to the public is vested exclusively in the Florida Fish and Wildlife Conservation Commission. However, the county is authorized to regulate the abatement of public nuisances such as sanitation or noise that may be associated with the keeping of wildlife.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, Rule 68A-6.0011, F.A.C.
[2] See, s. 372.921(2), Fla. Stat.
[3] Section 372.921(4), Fla. Stat.
[4] Section 372.922(1), Fla. Stat.
[5] The commission has adopted Chapter 68A-6, Florida Administrative Code, to implement the constitutional and statutory mandate for administrative regulations.
[6] City of Miramar v. Bain, 429 So.2d 40 (Fla. 4th DCA 1983).
[7] Id. at p. 42.
[8] Id. at p. 43. And see, Rule 68A-6.0022(5)(a)5.a. and b., F.A.C., requiring that wildlife be maintained in appropriate neighborhoods and that the commission inspect and approve facilities before issuing any permit for the possession of wildlife.
[9] Letter of February 20, 2002, to the Department of Legal Affairs from Tracey S. Hartman, Assistant General Counsel, Florida Fish and Wildlife Conservation Commission, regarding the Columbia County opinion request.